## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

DAVID L. RABE,                                    Case No. 1:15-cv-361
      Petitioner,

                                              Bertelsman, J.
   vs.                                          Bowman, M.J.


OHIO ATTORNEY GENERAL                  **REPORT AND**
MIKE DEWINE,[1]                               **RECOMMENDATION**
      Respondent.


Petitioner, who currently resides at Talbert House, a "halfway house" in Cincinnati, Ohio, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (*See* Docs. 3, 12).  This matter is before the Court on the petition, respondent's return of writ, and petitioner's "traverse" in reply to the return of writ  (Docs. 3, 5, 7).[2]

## I.  PROCEDURAL BACKGROUND

### A. State Court Proceedings

#### Trial Proceeding

In May 2012, the Clermont County, Ohio, grand jury returned an indictment charging

---

[1] In the petition, petitioner properly named the Warden of London Correctional Institution (LoCI) as respondent because petitioner was incarcerated at LoCI at the time the action commenced.  (*See* Docs. 1, 3).  In February 2016, petitioner notified the Court that he "recently moved to [Talbert House,] a halfway house in Cincinnati."  (Doc. 12).  It is unclear who now has actual custody of petitioner, and neither party has filed a motion to change the name of the respondent.  Ohio's attorney general "is in the best position to inform the court as to who the proper party respondent is" at this time and can "move for a substitution of party" if the proper party respondent is not him.  *See* Rule 2, Rules Governing Section 2254 Cases in the United States District Courts (Advisory Committee Notes), 28 U.S.C. foll. § 2254.  Therefore, the caption of the case is hereby changed to reflect that, at least at this juncture, the proper party respondent is the Ohio Attorney General.

[2] Respondent has also separately filed 47 exhibits obtained from the underlying state-court record.  (*See* Doc. 4).  In addition, petitioner was permitted to expand the record to include as part of the record before this Court the transcript of a pretrial hearing held on March 20, 2013.  (Doc. 13; *see also* Doc. 14).

petitioner with two counts of operation of a vehicle while under the influence of alcohol or drug

of abuse (OVI) in violation of Ohio Rev. Code § 4511.19(A) (Counts 1-2); one count of failing

to stop at the scene of an accident in violation of Ohio Rev. Code § 4549.02 (Count 3); and one

count of driving while under an OVI suspension in violation of Ohio Rev. Code § 4510.14(A).

(*See* Doc. 4, Ex. 2). The facts giving rise to the charges were summarized as follows by the Ohio

Court of Appeals, Twelfth Appellate District, based on evidence presented at petitioner's trial:[3]

> During the evening hours of June 13, 2012, Deputy Chris Allen was dispatched to the scene of an accident reported by a 911 caller. The caller stated that he observed a white work van with ladders attached to the roof hit two vehicles and flee the scene. The 911 caller followed the van to a side-street near an apartment complex, and got out of his vehicle to approach the van. At that point, the white work van drove toward the caller, and the ladders attached to the van's roof hit the caller's vehicle causing damage. The caller, who had ducked out of the way of the ladders and was not injured, watched the van enter the apartment complex and park haphazardly.

> The caller approached the driver, later identified as Rabe, and tried to speak to him. During the interaction, the caller smelled alcohol on Rabe and observed Rabe acting as if he was intoxicated. Rabe began telling other people in the parking lot that the caller had just hit his work van, and then he walked into an apartment building.

> After the interaction with Rabe, the caller waited for Deputy Allen to arrive. Once Deputy Allen arrived at the apartment complex, the 911 caller described Rabe and identified the white van he had followed from the scene of the accident. The 911 caller directed Deputy Allen to the specific building of the apartment complex he saw Rabe enter after their interaction.

> Deputy Allen approached the white work van, which had ladders attached to the roof, and observed "significant rear damage." Deputy Allen also noticed several people near the van who were working on a vehicle. Deputy Allen asked the people if they were familiar with the owner of the white work van, and they stated that they were. The people working on the vehicle directed Deputy Allen to a

---

[3] The Ohio appellate court summarized the facts in its direct appeal decision issued May 12, 2014. (*See* Doc. 4, Exs. 1, 21). 28 U.S.C. § 2254(e)(1) provides that "[i]n a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct" unless the petitioner rebuts the presumption by "clear and convincing evidence." In the absence of clear and convincing evidence to rebut the Ohio Court of Appeals' factual findings quoted below, the appellate court's findings are presumed to be correct. *See McAdoo v. Elo,* 365 F.3d 487, 493-94 (6th Cir. 2004).

specific apartment in building 68, and informed Deputy Allen that the driver of the white van was named Dave. Deputy Allen approached the apartment, knocked on the door, and was greeted by a woman later identified as Rabe's girlfriend. When Deputy Allen asked to speak to the owner of the white work van, the woman told Deputy Allen to "hold on a second" and then loudly called for Rabe. Rabe did not respond so Rabe's girlfriend permitted Deputy Allen to enter the apartment. Once in the apartment, Deputy Allen found Rabe making toast in the kitchen.

Deputy Allen observed that Rabe's eyes were bloodshot and glassy and that his speech was somewhat slurred. Rabe had difficulty maintaining his balance, and another deputy, who had since arrived at the apartment, had to help Rabe keep his balance. When questioned by the deputies, Rabe stated that he had not driven the van that day, but could not tell the deputies how the van was damaged or who could have been driving it at the time of the accident. Deputy Allen informed Rabe of his belief that Rabe was the driver of the van at the time of the accident. Deputy Allen informed Rabe that he was "going to take him into custody ***." Deputy Allen placed Rabe, who had become "uncooperative and upset," in handcuffs and placed him in the back of his police cruiser until highway patrol arrived. As he placed Rabe in his cruiser, Deputy Allen noticed a "significant smell of alcohol coming from [Rabe's] person."

Trooper Drew Untied of the highway patrol arrived at the scene of the accident and was told that a white van had caused the accident and then had fled the scene. The drivers of the two vehicles hit by the white work van informed Trooper Untied that the van had turned left in front of one vehicle, crashed into it, and then came to a stop. The white van then backed up suddenly, hitting the other vehicle in the process. The van then drove over the curb and fled the scene. The drivers told Trooper Untied that the white work van suffered heavy damage to its rear, and that a witness to the accident had followed the white van after it fled the scene.

Police dispatch informed Trooper Untied that the driver of the white work van had been detained at the apartment complex, and Trooper Untied went to the complex to investigate further once he had finished investigating the scene of the accident. Once at the complex, Trooper Untied observed that Rabe's van had extensive damage on the rear panel and bumper. Other officers at the scene informed Trooper Untied that Rabe's girlfriend had given a statement that Rabe arrived at the apartment shortly before Deputy Allen knocked on the door, and that Rabe was driving the white work van that day. Once he had all of the pertinent information, Trooper Untied questioned Rabe.

Trooper Untied opened the door to Deputy Allen's police cruiser to speak to Rabe, and Trooper Untied detected a strong odor of alcohol coming from inside the cruiser. Trooper Untied also observed that Rabe's eyes were "very bloodshot and glassy" and that Rabe's speech was slightly slurred.

Trooper Untied began the process of administering field sobriety tests, and questioned Rabe about the incident.  Rabe denied drinking and also stated that he was not aware of what happened to his van.  Rabe told Trooper Untied that he had an inner ear problem that caused ringing in his ear and left him unbalanced.  Rabe also told Trooper Untied that he had an injured rotator cuff, a bulging disc in his lower back, a pinched nerve, and had taken a prescribed sleeping pill prior to the officers coming to his home.  Trooper Untied then administered a horizontal gaze nystagmus (HGN) test and found Rabe exhibited six out of a possible six clues of impairment.  Trooper Untied also administered a walk-and-turn test and found five out of a possible eight clues, as well as a one-leg-stand test with three out [of] four clues indicating impairment.  Trooper Untied then asked Rabe to recite portions of the alphabet and to count backwards, and Rabe had difficulty doing both.  Officer Untied then informed Rabe that he would conduct a portable breath test, and Rabe refused to cooperate in the testing and subsequently refused to take the Breathalyzer test.

(*Id.*, Ex. 1, at PAGEID#: 44-45).

Prior to trial, petitioner's initial counsel, Lawrence Fisse, filed a motion "to dismiss the charges . . . and/or suppress any and all evidence obtained and arising from and subsequent to, the warrantless seizure and arrest" of petitioner.  (*Id.*, Ex. 4).  The motion was denied on December 4, 2012 following a two-day hearing held in November 2012.  (*See id.*, Exs. 5-7).  Thereafter, on March 15, 2013, petitioner filed a *pro se* motion for substitution of counsel, which was granted at the end of a hearing held on March 20, 2013, even though the trial was scheduled to commence the following week.  (*See* Doc. 13, Tr. 2-3, 14-15, at PAGEID#: 968-69, 980-81).  A new attorney from the Public Defender's Office was ultimately appointed to replace Fisse as petitioner's trial counsel.

Approximately four months later, in July 2013, the matter proceeded to trial before a jury, which found petitioner guilty as charged.  (*See* Doc. 4, Ex. 10).  On August 9, 2013, following a sentencing hearing, the trial court issued the final judgment entry sentencing petitioner to a 3-year prison term for the OVI offense charged in Count 2, which was to be served consecutively to a sentence imposed in a prior case, *State v. Rabe*, Clermont County Case

4

No. 2009-CR00583.[4]  (*Id.*, Ex. 11).

## Direct Review Proceedings

An attorney from the Public Defender's Office filed a timely notice of appeal to the Ohio

Court of Appeals, Twelfth Appellate District, on petitioner's behalf.  (Doc. 4, Exs. 15-16).

Thereafter, with the assistance of new counsel appointed for appeal purposes, petitioner filed an

appellate brief raising the following assignments of error:

1. The trial court erred as a matter of law by overruling Appellant's motion to suppress.

2. The trial court erred by restricting Appellant from introducing any evidence and/or witnesses that had not been disclosed prior to March 20, 2013.

3. Petitioner was denied effective assistance of counsel in violation of his constitutional rights thus prejudicing his right to a fair trial.

4. The evidence was insufficient as a matter of law and/or against the manifest weight of the evidence to sustain Appellant's convictions.

5. The trial court erred as a matter of law by improperly sentencing Appellant.

(*Id.*, Ex. 17).

On May 12, 2014, the Ohio Court of Appeals overruled the assignments of error and

affirmed the trial court's judgment.  (*Id.*, Exs. 1, 21).

Petitioner next pursued a timely *pro se* appeal to the Ohio Supreme Court.  (*See id.*, Exs.

22-23).  In his memorandum in support of jurisdiction, petitioner presented the following claims

as propositions of law: (1) the trial court erred as a matter of law in overruling his suppression

motion; and (2) the trial court violated his right to due process when it restricted him "from

introducing evidence and/or witnesses that had not be disclosed prior to March 20, 2013."  (*Id.*,

---

[4] It is noted that no sentence was imposed for the OVI offense charged in Count 1 because that count was merged with Count 2. (*See* Doc. 4, Ex. 11).  Petitioner was also sentenced to concurrent 6-month prison terms for the offenses charged in Counts 3 and 4, which were to be served concurrently to the 3-year sentence imposed for the OVI offense charged in Count 2.   (*See id.*).

Ex. 24).

On October 8, 2014, the Ohio Supreme Court issued an Entry declining to accept jurisdiction of the appeal.  (*Id.*, Ex. 25).

## Application To Reopen Appeal

On June 30, 2014, during the pendency of the direct review proceedings before the Ohio Supreme Court, petitioner filed a timely *pro se* application pursuant to Ohio R. App. P. 26(B) with the Ohio Court of Appeals, Twelfth Appellate District, requesting that his appeal be reopened.  (*See* Doc. 4, Ex. 26).   In the application, petitioner alleged that his counsel on direct appeal was ineffective for failing to raise the following additional claims as assignments of error:

1. The Defendant was denied the right to counsel during a critical stage of the proceedings in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

2. The Defendant was denied due process and a fair trial in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution by improper remarks of the prosecutor during closing statements.

3. The Defendant was denied Due Process and a fair trial when the trial court instructed the jury that they could use his prior DUI conviction as substantive evidence of guilt on the charges in this case in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

(*Id.*).

On October 10, 2014, the Ohio Court of Appeals issued an Entry denying the reopening application after addressing the merits of petitioner's ineffective-assistance allegations.  (*Id.*, Ex. 42).

Petitioner appealed to the Ohio Supreme Court based on the same three claims of ineffectiveness that had been presented in his reopening application.  (*See id.*, Exs. 43-45).  On January 28, 2015, the Ohio Supreme Court declined to accept jurisdiction of the appeal.  (*Id.*, Ex.

6

46).

**B. Federal Habeas Corpus Petition**

The instant federal habeas corpus action commenced on June 1, 2015, the date

petitioner's *in forma pauperis* application was stamped as "filed" with the Court.  (*See* Doc. 1).

In his *pro se* petition, petitioner has presented the following grounds for relief:

> **Ground One:**  My appellate counsel was ineffective for failing to raise a
> violation of my right to counsel at a critical stage of the proceedings, in violation
> of the 6th and 14th Amendments.
>
> **Supporting Facts:**  I was denied the right to counsel at a pre-trial discovery
> hearing wherein discovery was closed and the witness lists were finalized.  I was
> not given advance notice of this hearing and I was told I could only add witnesses
> if I had memorized their address.  As a result, I was prohibited from adding
> critical defense witnesses to the witness list and I would have benefited from legal
> counsel at this critical stage.  Appellate counsel ineffectively raised this issue as a
> discovery violation and not as a deprivation of counsel.
>
> **Ground Two:**  Appellate counsel was ineffective for failing to raise due process
> and prosecutorial misconduct claims for the prosecutor's statements in closing.
>
> **Supporting Facts:**  I was denied a fair trial when the prosecutor told the jury
> during closing arguments that I must have been guilty because I refused to take a
> breathalyzer test and that no one would refuse to take such a test unless they were
> guilty.  This altered the State's burden of proof and a competent appellate attorney
> would have raised this prosecutorial misconduct on direct appeal.
>
> **Ground Three:**  Appellate counsel was ineffective for failing to raise Due
> Process and fair trial violations due to the trial court's erroneous jury instructions.
>
> **Supporting Facts:**  The trial court instructed the jury that they could use my prior
> DUI conviction as substantive evidence of guilt to the charges in this case.  The
> State was relieved of its duty to prove me guilty beyond a reasonable doubt on
> each and every element of the offense and a competent appellate attorney would
> have raised this due process violation on direct appeal.
>
> **Ground Four:**  I was denied due process of law and the right to present a
> complete defense when the trial court arbitrarily imposed a discovery sanction
> and prohibited adding witnesses in violation of the 5th, 6th, and 14th
> Amendments to the U.S. Constitution.
>
> **Supporting Facts:**  After my original trial attorney was removed for ineffective

> assistance in the pre-trial stage, the trial court ordered discovery to be closed and
> prohibited me and my new attorneys from adding any additional witnesses to the
> witness list as a discovery sanction. As a result, I was prohibited from calling
> witnesses who had material information that was relevant to my defense.

(Doc. 3, at PAGEID#: 30, 31, 33, 34-35).

Respondent has filed a return of writ addressing each of petitioner's claims, and
petitioner has filed a "traverse" in reply to the return of writ. (Docs. 5, 7). In addition, petitioner
has "voluntarily dismisse[d]" his third ground for habeas relief after reviewing the audio-tape of
the jury instructions provided during discovery in this action and determining that it "supports
the position presented by the Respondent" with respect to that claim of constitutional error.[5]
(*See* Doc. 13, at PAGEID#: 963). Because petitioner has withdrawn the claim alleged in Ground
Three, this Court will address only the claims alleged in Grounds One, Two and Four of the
petition.

**II. OPINION**

This Court's review of petitioner's grounds for relief is limited. First, in this federal
habeas proceeding, the Court has jurisdiction to review petitioner's claims only to the extent that
petitioner challenges his confinement based on an alleged violation of the Constitution, laws or
treaties of the United States, and not "on the basis of a perceived error of state law." 28 U.S.C. §
2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Wilson v. Corcoran,* 562 U.S. 1, 5
(2010) (quoting *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991)) ("it is not the province of a
federal court to reexamine state-court determinations on state-law questions"). "[B]ecause the

---

[5] According to respondent, the trial court made a "*nunc pro tunc*" correction to the trial transcript to reflect
that the jury had been properly instructed that evidence of petitioner's prior DUI conviction could *not* be considered
as evidence that petitioner was operating a vehicle under the influence of alcohol on June 13, 2012, but rather only
for the limited purpose of determining whether the State had proven the element of Counts 1 and 2 that "the
defendant previously has been convicted of or pleaded guilty to [an OVI offense] that was a felony." (*See* Doc. 4,
Ex. 2 & Exs. 13 & 31, at PAGEID#: 491-92, 494-95 & 767-68, 770-71; *see also* Doc. 5, at PAGEID#: 910).
Apparently, the audio-tape of the jury instructions confirmed that, as the respondent has claimed, the jury was
properly instructed about that matter.

state courts are final authority on state-law issues, the federal habeas court must defer to and is bound by the state court's rulings on such matters." *Bennett v. Warden, Lebanon Corr. Inst.,* 782 F. Supp.2d 466, 478 (S.D. Ohio 2011) (and cases cited therein); *see also Warner v. Zent,* 997 F.2d 116, 133 (6th Cir. 1993) (quoting *Mullaney v. Wilbur,* 421 U.S. 684, 690-91 (1975)) (absent a showing of "extreme circumstances where it appears that the [state court's] interpretation of [state law] is an obvious subterfuge to evade consideration of a federal issue," the federal habeas court is bound by the state court's determination of state law"); *Meyers v. Ohio,* No. 1:14cv1505, 2016 WL 922633, at *7 (N.D. Ohio Jan. 21, 2016) (Report & Recommendation) (citing *Olsen v. McFaul,* 843 F.2d 918, 929 (6th Cir. 1988)) ("federal habeas courts are bound by decisions of intermediate state courts on questions of state law unless convinced that the state's highest court would decide the issue differently"), *adopted,* 2016 WL 916602 (N.D. Ohio Mar. 9, 2016). *Cf. Jones v. Woods,* 635 F. App'x 254, 257 (6th Cir. 2015) (citing *Davis v. Straub,* 430 F.3d 281, 291 (6th Cir. 2005)) (in affirming the district court's denial of a habeas petition based on a claim that the petitioner's trial counsel was ineffective for failing to request a self-defense jury instruction, the Sixth Circuit emphasized that "[w]e are bound by the [state] Court of Appeals' determination that [the petitioner] was not entitled to the instruction under state law").

Second, the Court's review of federal constitutional claims that have been adjudicated on the merits by the state courts is circumscribed. Under the applicable standard of review set forth in 28 U.S.C. § 2254(d), a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

9

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000)). "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* at 599-600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet. *Id.* at 600. As the Sixth Circuit explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards. *See, e.g., Cullen v. Pinholster,* [563] U.S. [170], 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court). It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable*. . . . This is a "substantially higher threshold.". . . To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* [562] U.S. [86, 98-99], 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original). The Supreme Court has further held that when a state court rules against a defendant in an opinion that "addresses some issues but does not expressly address the federal claim in question," the federal habeas court must presume, subject to rebuttal, that the

federal claim was "adjudicated on the merits" and thus subject to the "restrictive standard of review" set out in § 2254(d). *See Johnson v. Williams*, __ U.S. __, 133 S.Ct. 1088, 1091 (2013).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 562 U.S. at 102. In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

The Supreme Court has made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher*, __ U.S. __, 132 S.Ct. 38, 44-45 (2011); *cf. Otte,* 654 F.3d at 600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision"). The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412); *see also White v. Woodall*, __ U.S. __, 134 S.Ct. 1697, 1702 (2014) (quoting *Howes v. Fields*, __ U.S. __, 132 S.Ct. 1181, 1187 (2012) (internal citation and quotation marks omitted)) ("[C]learly established Federal law' for purposes of § 2254(d)(1) includes 'only the holdings, as

opposed to the dicta, of this Court's decisions.").  Decisions by lower courts are relevant only "to the extent [they] already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte*, 654 F.3d at 600 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010)).

Finally, as noted above, *see supra*, p. 2 n.3, in accordance with 28 U.S.C. § 2254(e)(1), this Court must presume factual findings made by the state courts are correct in the absence of "clear and convincing evidence" rebutting those findings.  *Cf. Holland v. Rivard*, 800 F.3d 224, 242 (6th Cir. 2015), *cert. denied*, 136 S.Ct. 1384 (2016).

With these general principles in mind, the Court turns now to consider the claims alleged in Grounds One, Two and Four of the petition.

## A.  Grounds One and Four:

In Grounds One and Four of the petition, petitioner raises claims stemming from a pretrial hearing that was held on March 20, 2013.  In Ground One, petitioner contends that he was deprived of counsel at that critical-stage hearing, which his appellate counsel should have raised as an issue for consideration on direct appeal.  (*See* Doc. 3, at PAGEID#: 30; *see also* Doc. 7, at PAGEID#:  921-25).  In Ground Four, petitioner argues that the trial court violated his constitutional right to present a complete defense when it ruled at the hearing that he was restricted from adding witnesses to his witness list.  (*See* Doc. 3, at PAGEID#: 34-35; *see also* Doc. 7, at PAGEID#: 932-36).  The claims alleged in Grounds One and Four were raised to both the Ohio Court of Appeals and the Ohio Supreme Court in the direct review and reopening proceedings.  (*See* Doc. 4, Exs. 17, 24, 26, 45).  Therefore, the claims are subject to review on the merits.

### 1. Background: March 20, 2013 Pretrial Hearing

The record of the hearing held on March 20, 2013 reflects that petitioner was present in the court with attorney Lawrence Fisse, who was still serving as petitioner's trial counsel.  (*See* Doc. 13, Tr. 2, at PAGEID#: 968).  The hearing was originally scheduled "for pretrial and a termination of the State's motion to continue the trial" with the prosecutor confirming that the State was prepared for trial the next week.  (*See id.*).  However, in the interim, petitioner had filed two *pro se* motions—a motion "To Correct an Unlawful Sentence" and a motion to "Substitute Appointed Counsel," which the trial court also addressed at the hearing.  (*See id.*, Tr. 3, at PAGEID#: 969).

The court first considered the "Motion to Correct an Unlawful Sentence," which challenged the sentence imposed in the prior OVI case following petitioner's entry of a guilty plea in that matter in December 2009.  (*See id.*).  The court overruled petitioner's motion on the ground that the prison sentence of 29 months, which was imposed after petitioner violated the terms and conditions of his original release on probation, fell within the range of available sentences and did not exceed the 30-month statutory maximum for the fourth-degree-felony offense.  (*Id.*, Tr. 4-5, at PAGEID#: 970-71).

The court turned next to petitioner's motion for substitution of counsel.  Before ruling on the motion, the court engaged in an extensive colloquy with petitioner.  The transcript provides in relevant part the following record of the conversation that took place between the court and petitioner:

> THE COURT:  . . . .And this matter was set for trial on Monday.  There were not the written orders, but quite frankly understandings and agreements of counsel off the record that have – how these cases have been – criminal cases in this county have been operated for many years, and that is the State provides complete discovery.

If the Defense does not think there is a complete discovery they can file a motion, but that rarely happens. But I initially want to address your claim, Mr. Rabe, that – and I do not want you to tell me necessarily – you're not testifying, but I do have authority under Criminal Rule 16(K) to regulate discovery.

So you need to tell me now, Mr. Rabe, what evidence you have to prove your innocence, and then particularly the names of any and all witnesses that you believe that you have that will support your claim of innocence as well as any other evidence, be it documents, be it photographs, or anything that you believe will support your position that you're innocent of operating the motor vehicle while under the influence, that you are innocent of leaving the scene of an accident for which you've been charged with at this point in time, and the operating without a valid driver's license. I need their names. I need addresses, and I need any documents that you believe that you have right now.

THE DEFENDANT: The only thing I can give you is what the prosecuting attorney has supplied to you. There's – I was at home 20 minutes by myself, no contact with law enforcement. There is no direct evidence whatsoever.

THE COURT: That's not my question, Mr. Rabe, and I don't want . . . you to give me a statement. I don't want you to testify. I want you to tell me the names and addresses of any person other than the State has disclosed to Mr. Fisse in discovery that you intend to call as a witness in your case to support your innocence of these charges.

THE DEFENDANT: Michelle Rayburn.

THE COURT: And that is your girlfriend?

THE DEFENDANT: Yes, it is.

**** 

THE COURT: Okay. Michelle Rayburn is the only witness that you would intend to call other than yourself, which you are not required to do. . . . All right. No other witnesses whatsoever other than . . . that on [the State's] witness list and Michelle Rayburn, no other witnesses that you are aware of?

THE DEFENDANT: No.

THE COURT: Do you have any documentary evidence? Any photographs? Any – anything whatsoever that is printed, a photograph, I mean, a video tape, anything at all that you would provide to counsel that would support your claim of innocence in these charges?

THE DEFENDANT: No, Sir.

14

THE COURT:  Do you have anything from the Bureau of Motor Vehicles that would reflect that you actually did have a valid license . . . on the date that this offense allegedly occurred back on June 13th? . . .

THE DEFENDANT:  No, Sir.

THE COURT:  All right.  And then just so that I'm clear then, the only evidence that you have to present on behalf of yourself at any trial in this matter will be the testimony of Michelle Rayburn?

THE DEFENDANT:  And/or myself, yes.

****

THE COURT:  All right.  Now, . . . and I don't want you to disclose necessarily attorney-client privilege conversation, but . . . I want you to explain to me what the complete breakdown is in the attorney-client relationship between you and Mr. Fisse at this point in time.

THE DEFENDANT:  I had basically had asked and requested numerous times to have it explained to me how a[] F-4 OVI could possibly carry a sentence it was.  I thought it was incorrect.  That was never addressed.

THE COURT:  Now, . . . you're not charged in this case with a . . . felony of . . . the fourth degree.  You're charged with a felony of the third degree.

THE DEFENDANT:  Well, that's just when this started.  I actually had asked prior to, because he's been my lawyer on both cases.  The previous one was blown off.  I was never – that was never addressed, the details.

****

THE COURT:  . . .[Y]ou're talking about the . . . 2009 case?

THE DEFENDANT:  That and this one.  It . . . initiated with no communication. I had inquired numerous times about detail and was never given it. . . .  My contact was pretty much left in the dark with what was going on with trial within the courts.

****

THE COURT:  Are you talking about your first felony DUI in the 2009 case that you're now serving 29 months on?

THE DEFENDANT:  It's actually yes and no.  It's actually for both.

15

THE COURT: Well, let's do this. You, in the 2009 case, you stood right where you are now?

THE DEFENDANT: Right.

**** 

THE COURT: [The judge] went over your rights with you, constitutional rights?

THE DEFENDANT: Yes, Sir. He did.

THE COURT: Advised you of the nature of the sentence?

THE DEFENDANT: Yes, Sir. He did.

THE COURT: And . . . advised that you could get anywhere from six months to 30 months?

THE DEFENDANT: Yes, Sir. He did.

THE COURT: Okay. And you entered a plea to that at that point in time, correct?

THE DEFENDANT: That's correct.

THE COURT: All right. So was Mr. Fisse your attorney at that time?

THE DEFENDANT: At the time, no. He was not.

THE COURT: Okay. So Mr. Fisse had nothing to do with the '09 case, correct?

THE DEFENDANT: Except at the probation violation.

THE COURT: I understand that. Now, how has there been a breakdown between you and Mr. Fisse now on this 2012 case?

THE DEFENDANT: Basically, that not a . . . great deal has been discussed. I've been told to basically plea bargain out and try to reduce my sentence, and I disagree with him. I do not believe that I am guilty of this, and he keeps trying to, I guess, plea bargain me out rather than taking it to trial. Although, he has agreed to take it to trial, but I do not believe he willingly is doing that. I think he would rather plea bargain me out, and I do not agree with that . . ., and I have loss of confidence – complete loss of confidence that I will be represented properly in a trial setting.

16

THE COURT:  Okay.  Let me ask you this too just so the record is clear[.]  We had a several-hour motion to suppress hearing, and you s[a]t through that entire hearing; did you not?

THE DEFENDANT:  Yes, I did.

THE COURT:  All right.  You were able to hear everything that was testified to at that particular hearing?

THE DEFENDANT:  Yes, I did.

THE COURT:  Correct?  Including Michelle Rayburn's testimony that . . . came in later because she was unavailable at the first hearing date; do you recall that?

THE DEFENDANT:  Yes, I do.

THE COURT:  All right.  And as I understand it then . . . you clearly have no other witnesses or evidence to present.  So [the] disagreement between you and Mr. Fisse is as to . . . whether there's sufficient fact[s] to . . . support a conviction in this case; is that correct?

THE DEFENDANT:  That's absolutely correct.

THE COURT:  And you absolutely don't believe after what all you heard that in your mind that you can be convicted of this operating the motor vehicle while under the influence of alcohol, leaving the scene, and driving under an OVI suspension?

THE DEFENDANT:  Sir . . . you're missing or combining the . . . OVI with the other two misdemeanors.  The other two misdemeanors, particularly I have already said that I was guilty of leaving the scene of the accident.  That is . . . to me a separate and complete issue.  The issue of OVI, I am dead set.  I am not guilty of that, and I do not and will not plea bargain out to it.

It's just I've heard the evidence.  I don't believe the evidence, and I think it's in my favor.  I believe the video and everything that was shown is in my favor, and I will not plea bargain out to it.  Yet, I keep getting, ["]You need to plea bargain out,["] or ["]you should plea bargain out,["] and I'm not going to do it.  I do not feel that I'm getting proper representation.

(*Id.*, Tr. 6-14, at PAGEID#: 972-80).

At that point in the proceeding, the court reluctantly granted petitioner's motion for substitution of counsel, stating in pertinent part:

. . . . I'm not going to put Mr. Fisse in the position of representing you when I think there is a breakdown. It's one sided. Mr. Fisse, quite frankly, . . . is one of the most competent, one of the most thorough, and one of the best criminal defense attorneys in this region. I've known him for over 30 years. He is detailed. He is thorough, and candidly is . . . probably the best and is the most senior criminal defense attorney in this county. So – but I'm not going to force him to do this.

So we will have the public defender's office, I will direct Mr. Hannon to reassign a public defender to you. You have to understand, Mr. Rabe, that what you've seen and what you've heard is not going to get any better.

****

And maybe your girlfriend might try to change her story. This is something that is locked in place.

****

And you may very well have the same advice given to you by the next attorney. I am not going to grant another withdraw. I am not going to go down that road simply because you have it in your mind. And . . . taking it to trial is not the issue. You have a right to a jury trial, and I'll not interfere with that. But . . . this next attorney . . . is going to see this thing through trial.

And if that attorney . . . agrees with Mr. Fisse that perhaps you need to consider a plea bargain in this case, I'm not going to accept that as a breakdown in communications. In fact, I'm sure Mr. Fisse has informed you of every in and out of this thing, because I know that's what he's done. I've co-counseled with Mr. Fisse in the past, and I know that that's what he does. He wouldn't have his job if he hadn't done that.

So I'm doing this primarily because Mr. Fisse has now been put in an untenable position, but the next public defender will not be put in that position because they know what's going on and they will go ahead and they'll take this to trial. And simply because you disagree with their judgment is not going to be sufficient to warrant yet another . . . attorney to be appointed to you.

(*Id.*, Tr. 14-16, at PAGEID#: 980-82).

The court then continued the trial date set for the following week and concluded the

hearing as follows:

At this point in time . . . as of today there will be no new witnesses that you can call. There will be no documentary evidence that you can use, because this case

was set to go and I'm treating this essentially as the discovery cut-off date.  So
nothing new can be . . . brought forward *unless it is something that is legitimately
newly discovered.*

In other words, something that was not in good faith able to have been discovered
prior to today, or prior to this point in time.  So we're cutting it off.  At this point,
the State has already provided everything.  You will be notified by the . . .
attorneys . . . reassigned by Mr. Hannon to represent you along with the new trial
date.  And I'll set this for a pretrial.

(*Id.*, Tr. 16-17, at PAGEID#: 982-83) (emphasis added).

Petitioner's two grounds for relief stemming from that March 20, 2013 hearing were

presented to the Ohio Court of Appeals, which was the last state court to issue reasoned

decisions addressing the merits of those claims in two separate proceedings.  Specifically,

petitioner raised the claim alleged in Ground Four as an assignment of error on direct appeal and

the ineffective-assistance-of-appellate-counsel claim alleged in Ground One in his application for

reopening of the appeal.  (*See* Doc. 4, Exs. 17, 26).  The state appellate court's decisions

addressing each claim of constitutional error are discussed below.  Upon review of those

decisions in light of the state-court record, the undersigned concludes that petitioner has not

demonstrated he is entitled to a writ of habeas corpus based on either ground for relief.

### 2.  Ground Four:  Claim Challenging Restriction On Discovery

With respect to the claim alleged in Ground Four, petitioner contended on direct appeal

that the trial court's ruling setting the March 20, 2013 hearing date as the discovery cut-off date

amounted to an abuse of discretion and "may have denied [him] the right to present his defense."

(*See* Doc. 4, Ex. 17, at PAGEID#: 562-63).  The Ohio Court of Appeals overruled the

assignment of error, reasoning in relevant part as follows based on state-law standards governing

review of discovery orders:

According to Crim.R. 16(L)(1), a trial court "may make orders regulating
discovery * * *."  A trial court's decision regarding a discovery order will not be

reversed absent an abuse of discretion. . . .  An abuse of discretion occurs when a trial court's decision is arbitrary, unconscionable or unreasonable. . . .

The record indicates that ten days before Rabe's jury trial was scheduled to begin, he moved the court to appoint new counsel.  Five days later, the trial court held a hearing on Rabe's motion to appoint new counsel.  Rabe told the trial court that he wanted different representation because his original counsel was not preparing adequately for the upcoming trial, was too intent upon Rabe pleading guilty to the charges, and was not pursuing the evidence that Rabe claimed he had that established his innocence.  The trial court asked Rabe what more his counsel could be doing for him, and what evidence or witnesses existed that Rabe's counsel was not pursuing.  Rabe responded that the only witness he intended to call was his girlfriend, and he was unaware of any other evidence.

The trial court granted Rabe's motion to appoint new counsel, but also ordered that discovery would be closed as of that date, March 20, 2013.  The trial court reasoned that Rabe acknowledged that he had no other evidence or witnesses to present on his behalf, other than which was already discovered during the time of representation by Rabe's original trial counsel.  We do not find that the trial court's decision was an abuse of discretion.

The trial court's order limited Rabe to the evidence that was already collected during the normal discovery period before trial was scheduled to begin.  Rabe untimely moved for substitution of counsel, and the matter was heard only five days prior to the scheduled commencement of Rabe's jury trial.  The trial court's decision to close discovery as of the date of substitution of counsel did not foreclose the possibility of using newly discovered evidence, so long as the evidence could not have been, in good faith, discovered before the substitution of counsel occurred.

Moreover, Rabe has not pointed to a single piece of evidence he was denied from admitting, and has not stated any prejudice by the trial court's order.  Rabe did not proffer any evidence or witnesses he was foreclosed from presenting at trial because of the trial court's order, and he has not argued on appeal that there was any such evidence available to him after the date discovery was closed.  As such, the trial court's decision was not an abuse of discretion.

(Doc. 4, Ex. 1, at PAGEID#: 47-48) (Ohio case citations omitted).

As an initial matter, to the extent that petitioner contends that the Ohio appellate court

misapplied state-law standards governing review of discovery orders or otherwise erred in

finding no abuse of discretion under those standards, he has not stated a cognizable ground for

federal habeas relief.  As discussed above, *see supra* pp. 8-9, this Court lacks jurisdiction to

consider any such claim of error under Ohio law and, in any event, is bound by and must defer to the Ohio Court of Appeals' ruling on the state-law issue.

In addition, petitioner has not demonstrated that the trial court's alleged error amounted to error of federal constitutional dimension.  It is well-settled that "the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'"  *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)); *see also Holmes v. South Carolina*, 547 U.S. 319, 324 (2006).  However, the right is not unlimited and is subject to "reasonable restrictions" to "accommodate other legitimate interests in the criminal trial process."  *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (quoting *Rock v. Arkansas*, 483 U.S. 44, 55 (1987), in turn quoting *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973)); *see also Taylor v. Illinois*, 484 U.S. 400, 410-11 (1988) (holding, in a case involving the preclusion of evidence as a sanction for a discovery violation, that the right to present a defense is subject to  "rules of procedure that govern the orderly presentation of facts and arguments to provide each party with a fair opportunity to assemble and submit evidence to contradict or explain the opponent's case").  Rules restricting the admission of evidence "do not abridge an accused's right to present a defense so long as they are not arbitrary or disproportionate to the purposes they are designed to serve."  *Scheffer*, 523 U.S. at 308 (internal quotation marks and case citations omitted).  The Supreme Court has "found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused."  *Id.* (citing *Rock*, 483 U.S. at 58; *Chambers*, 410 U.S. at 302; *Washington v. Texas*, 388 U.S. 14, 22-23 (1967)).

In *Taylor*, the Supreme Court expressly rejected the argument that the Constitution bars a court from precluding evidence as a means of enforcement of discovery rules.  *See Taylor*, 484

U.S. at 411-16. In so ruling, the Court reasoned in relevant part:

> The trial process would be a shambles if either party had an absolute right to control the time and content of his witnesses' testimony. . . . The State's interest in the orderly conduct of a criminal trial is sufficient to justify the imposition and enforcement of firm, though not always inflexible, rules relating to the identification and presentation of evidence.
>
> The defendant's right to compulsory process is itself designed to vindicate the principle that the "ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts.". . . Rules that provide for pretrial discovery of an opponent's witnesses serve the same high purpose. Discovery, like cross-examination, minimizes the risk that a judgment will be predicated on incomplete, misleading, or even deliberately fabricated testimony. The "State's interest in protecting itself against an eleventh-hour defense" is merely one component of the broader public interest in a full and truthful disclosure of critical facts.
>
> ****
>
> It may well be true that [less drastic] alternative sanctions are adequate and appropriate in most cases, but it is equally clear that they would be less effective than the preclusion sanction and that there are instances in which they would perpetuate rather than limit the prejudice to the State and the harm to the adversary process. . . .
>
> We presume that evidence that is not discovered until after the trial is over would not have affected the outcome. It is equally reasonable to presume that there is something suspect about a defense witness who is not identified until after the 11th hour has passed. . . .
>
> . . . .It is elementary, of course, that a trial court may not ignore the fundamental character of the defendant's right to offer the testimony of witnesses in his favor. But the mere invocation of the right cannot automatically and invariably outweigh countervailing public interests. The integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of unreliable evidence, the interest in the fair and efficient administration of justice, and the potential prejudice to the truth-determining function of the trial process must also weigh in the balance.

*Id.* at 411-15.

Here, petitioner challenges the trial court's ruling setting a discovery deadline date, which

he claims prevented him from presenting additional evidence or witnesses not disclosed by the

date of the March 20, 2013 pretrial hearing. As the Ohio Court of Appeals found, the restriction was imposed five days before the trial was originally scheduled to commence, *after* the State had provided "complete discovery" and the defense was afforded the opportunity to argue that further evidence should have been submitted by the State to fulfill its obligation to provide "complete discovery." (*See* Doc. 13, Tr. 6, at PAGEID#: 972). As the Ohio Court of Appeals also recognized, although the trial court granted petitioner's request for a new attorney at the pretrial hearing and continued the trial date to accommodate that request, petitioner was not precluded by the March 20, 2013 discovery cut-off date from adding new witnesses or other evidence that could not have been discovered in good faith before Fisse's replacement by new counsel. (*See id.*, Tr. 17, at PAGEID#: 983).

There is simply no evidence in the record even remotely suggesting that a "weighty interest" of petitioner was impacted by the trial court's restriction limiting new evidence and witnesses to those that could not have been discovered in "good faith" by the March 20, 2013 pretrial hearing date. Although petitioner was represented by new counsel, he never attempted prior to his trial in July 2013 to add new witnesses or other evidence to the defense's case. Indeed, as the Ohio Court of Appeals has pointed out, petitioner has not cited any specific witness or evidence that he was foreclosed from introducing at trial.

In contrast, it appears from the record that the trial court imposed the evidentiary restriction out of legitimate concern that the integrity of the adversary process and truth-determining function of the trial would be compromised if petitioner were allowed to use the opportunity afforded by the granting of his last-minute request for substitution of counsel and continuance of the trial date to bring in "eleventh-hour" witnesses or other unreliable, even fabricated, evidence not subject to the "good faith" standard for discovery of new evidence. *Cf.*

23

*Taylor*, 484 U.S. at 414-15; *see also Williams v. Curtin*, 613 F. App'x 461, 465-66 (6th Cir. 2015) (in holding that the habeas petitioner was not entitled to relief based on the claim that enforcement of a discovery rule violated his constitutional right to present a defense, the Sixth Circuit pointed out that the state appellate court's decision was "facially consistent" with *Taylor* because in "both cases, the defendant's right to present his defense bowed to the prosecution's interest in protecting itself from an eleventh-hour defense, the court's interest in protecting the adversary process, and the public's interest in the truthful disclosure of critical facts"), *cert. denied*, 136 S.Ct. 982 (2016).  In particular, the court expressed concern at one point in the hearing that petitioner's girlfriend, who testified at the suppression hearing in November 2012 and was mentioned by petitioner as a potential defense witness at the March 20, 2013 hearing, might try to change her testimony.  (*See* Doc. 13, Tr. 15, at PAGEID#: 981).  In the absence of any showing that petitioner was hampered in his ability to present a defense, and in light of the countervailing public interests the trial court sought to protect, petitioner has not demonstrated that the challenged restriction was "arbitrary or disproportionate to the purposes [it was] designed to serve."  *See Scheffer*, 523 U.S. at 308; *cf. Wilbon v. Romanowski*, No. 07-12780, 2010 WL 3702580, at *18 (E.D. Mich. Aug. 20, 2010) (Report & Recommendation) (in rejecting the habeas petitioner's claim challenging the exclusion of two defense witnesses due to the defense's failure to comply with a court-imposed notice requirement, the court found that "[g]iven the absence of materiality to the testimony of the witnesses, and the potential delay and confusion in the trial caused by the witnesses being called without pretrial notice, it cannot be said that the employment of the rule to exclude the witnesses was arbitrary or disproportionate"), *adopted*, 2010 WL 3702576 (E.D. Mich. Sept. 16, 2010).

Accordingly, in sum, the undersigned concludes that petitioner has not stated a

cognizable ground for federal habeas relief in Ground Four to the extent he contends the trial

court abused its discretion or otherwise erred under Ohio law in setting the March 20, 2013

discovery cut-off date after granting his motion for substitution of counsel.  In addition,

petitioner has not demonstrated that his constitutional right to present a defense was violated by

the trial court's ruling in this case.  Therefore, petitioner is not entitled to relief based on the

claim alleged in Ground Four of the petition.

### 3.  Ground One: Claim of Denial of Counsel

With respect to the claim alleged in Ground One, petitioner essentially alleged in his *pro*

*se* reopening application that because the trial court granted his motion for substitution of

counsel at the March 20, 2013 hearing, he was not represented by an attorney during that critical-

stage proceeding in violation of his Sixth Amendment right to counsel.  (*See* Doc. 4, Ex. 26, at

PAGEID#: 686-89).  Petitioner contended that his appellate counsel was ineffective for failing to

raise the issue on direct appeal because "the deprivation of counsel was [a] more serious

violation" than the discovery-ruling error that was presented as an assignment of error.  (*Id.*, at

PAGEID#: 689).

The Ohio Court of Appeals rejected petitioner's argument on the ground that it did not

present a "genuine issue as to whether the applicant was deprived of the effective assistance of

counsel" under the applicable two-part standard set forth in *Strickland v. Washington*, 466 U.S.

668 (1984), which requires a showing of both "a deficiency in representation of appellant and

prejudice resulting from such deficient representation."  (*Id.*, Ex. 42, at PAGEID#:  851-52).

The court reasoned in pertinent part:

> The trial court's discovery ruling was the subject of appellant's second
> assignment of error on appeal.  This court found the court's ruling was not an
> abuse of discretion and appellant had not established any prejudice as a result of
> the ruling.  In his application for reopening, appellant has not established any

25

prejudice as the result of not being represented by counsel at the time of the
court's ruling.

(*Id.*, at PAGEID#: 852).

As a threshold matter, the Ohio Court of Appeals correctly identified the two-prong

standard of review enunciated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668

(1984), as governing the resolution of petitioner's ineffective-assistance-of-appellate-counsel

claim.  Under the first prong of the *Strickland* test, petitioner must show that appellate counsel's

representation fell below an objective standard of reasonableness based on all the circumstances

surrounding the case.  *Id.* at 688.  Judicial scrutiny must be highly deferential, and a "fair

assessment of attorney performance requires that every effort be made to eliminate the distorting

effects of hindsight" and to evaluate the challenged conduct from counsel's perspective at the

time the conduct occurred.  *Id.* at 689.  In determining whether or not counsel's performance was

deficient, the Court must indulge a strong presumption that the challenged conduct fell within the

wide range of reasonable professional assistance.  *Id.*

Appellate counsel is not constitutionally ineffective under this prong merely because he

declines to raise a non-frivolous issue on appeal that was requested by the defendant.  *See Jones*

*v. Barnes,* 463 U.S. 745, 751 (1983) (holding that an "indigent defendant [does not have] a

constitutional right to compel appointed counsel to press nonfrivolous points [on appeal]

requested by the client").  As the Supreme Court stated in *Barnes,* 463 U.S. at 754:

> For judges to second-guess reasonable professional judgments and impose on
> appointed counsel a duty to raise every "colorable" claim suggested by a client
> would disserve the very goal of vigorous and effective advocacy. . . .  Nothing in
> the Constitution or our interpretation of that document requires such a standard.

"Th[e] process of 'winnowing out weaker arguments on appeal and focusing on' those

more likely to prevail, far from being evidence of incompetence, is the hallmark of effective

appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536 (1986) (quoting *Barnes*, 463 U.S. at 751-52); *see also Coleman v. Mitchell,* 268 F.3d 417, 430-31 (6th Cir. 2001).  It is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim on direct appeal; however, "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Smith v. Robbins,* 528 U.S. 259, 288 (2000) (quoting *Gray v. Greer,* 800 F.2d 644, 646 (7th Cir. 1986)); *see also Wilson v. Hurley,* 108 F. App'x 375, 379 (6th Cir. 2004).

To satisfy the second "prejudice" prong of the *Strickland* test, petitioner must demonstrate that a "reasonable probability" exists that, but for his counsel's errors, the result of the direct appeal proceeding would have been different.  *See Strickland,* 466 U.S. at 694. Petitioner has met his burden if he shows that the result of the appeal would "reasonably likely have been different absent the errors." *Id.* at 695.

The Court need not examine the question of whether counsel's performance was deficient before addressing the question of whether petitioner was prejudiced by counsel's performance. The Court may dispose of an ineffective-assistance-of-counsel claim by finding that petitioner has made an insufficient showing on either ground.  *Id.* at 697.

In this federal habeas action, this Court must employ a "doubly deferential" standard of review in evaluating the reasonableness of the Ohio Court of Appeals' adjudication of petitioner's claim under *Strickland*.  *See Woods v. Donald,* __ U.S. __, 135 S.Ct. 1372, 1376 (2015) (per curiam); *Burt v. Titlow*, __ U.S. __, 134 S.Ct. 10, 13 (2013); *Premo v. Moore*, 562 U.S. 115, 122-23 (2011) (quoting *Harrington*, 562 U.S. at 104-05; *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).  Although "[s]urmounting *Strickland*'s high bar is never an easy task," *Harrington*, 562 U.S. at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)), the

AEDPA requires that a second layer of deference be accorded the state courts' adjudication of ineffective assistance of counsel claims.  The Supreme Court has explained:

> Even under *de novo* review, the [*Strickland*] standard for judging counsel's representation is a most deferential one. . . .
>
> ****
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both "highly deferential," . . . and when the two apply in tandem, review is "doubly" so. . . .   The *Strickland* standard is a general one, so the range of reasonable applications is substantial. . . .  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 562 U.S. at 105 (quoting *Strickland*, 466 U.S. at 689, and *Knowles*, 556 U.S. at 123); *see also Premo*, 562 U.S. at 122-23.  Therefore, on federal habeas review, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable," which "is different from asking whether . . . counsel's performance fell below *Strickland*'s standard."  *Harrington*, 562 U.S. at 101.

Here, the Ohio Court of Appeals determined that petitioner had not demonstrated a genuine issue of ineffectiveness under the *Strickland* test because the underlying claim of error involving the alleged denial of counsel at the March 20, 2013 pretrial hearing lacks merit.  In essence, the court concluded  that petitioner failed to demonstrate prejudice stemming from "not being represented by counsel" when the trial court issued its discovery ruling at the close of the hearing because the ruling did not amount to an abuse of discretion and petitioner had not shown any prejudice resulting from that ruling.  (*See* Doc. 4, Ex. 42, at PAGEID#: 852).  In so holding, the court did not address petitioner's argument that the underlying Sixth Amendment error amounted to "structural error" under an exception to the *Strickland* "prejudice" requirement that

was established by the Supreme Court in *United States v. Cronic*, 466 U.S. 648 (1984).[6]

In *Cronic*, the Supreme Court held that "courts may presume that a defendant has suffered unconstitutional prejudice if he 'is denied counsel at a critical stage of his trial.'" *See Woods*, 135 S.Ct. at 1375-76 (quoting *Cronic*, 466 U.S. at 659). The Court noted that the presumption applies in cases where "counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *See id.* at 1377 (quoting *Cronic*, 466 U.S. at 659 n.25); *see also Moss v. Hofbauer*, 286 F.3d 851, 859-60 (6th Cir. 2002). The Supreme Court has not offered "an explicit definition of a 'critical stage,'" *see Van v. Jones*, 475 F.3d 292, 298 (6th Cir. 2007), and has even pointed out that the "precise contours" of *Cronic* "remain unclear." *See Woods*, 135 S.Ct. at 1377. The Court has stated that the phrase "critical stage" denotes a step in the trial process with "significant consequences for the accused." *Id.* at 1376 (quoting *Bell v. Cone*, 535 U.S. 685, 696 (2002)). The Court has also emphasized that the "possibility of constructive denial of counsel is limited to situations involving 'constitutional error of the first magnitude,' which cannot be cured even if no prejudice is shown." *See Moss*, 286 F.3d at 860 (quoting *Cronic*, 466 U.S. at 659, in turn quoting *Davis v. Alaska*, 415 U.S. 308, 318 (1974)); *see also Woods*, 135 S.Ct. at 1378 (quoting *Cronic*, 466 U.S. at 658) ("*Cronic* applies in 'circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.'"). In *Cronic*, the Court noted: "Apart from circumstances of that magnitude, . . . there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *Cronic*, 466 U.S. at 659 n.26; *see also Moss*, 286 F.3d at 860. *Cf. Fuller v. Sherry*, 405 F. App'x 980, 986 (6th Cir. 2010) (quoting *Moss*, 286 F.3d at 861) (the *Cronic*

---

[6] *See* Doc. 4, Ex. 26, at PAGEID#: 686-87; *see also* Doc. 3, at PAGEID#: 30; Doc. 7, at PAGEID#: 921-25.

presumption of prejudice applies "only in rare circumstances" where the "constructive denial of counsel and the associated collapse of the adversarial system is [e]minently clear").

In this case, it is clear from the record that petitioner was not completely without the representation of counsel at the March 20, 2013 pretrial hearing.  Lawrence Fisse, who had been representing petitioner for several months throughout the entire discovery period, as well as at the in-depth hearing on petitioner's suppression motion, was present in the courtroom and was not prevented from assisting petitioner, particularly given that petitioner's *pro se* request for substitution of counsel was not granted until the end of the hearing.  *Cf. Coles v. United States*, No. 07-2098, 2008 WL 2510175, at *3-4 (C.D. Ill. June 19, 2008) (rejecting the petitioner's *Cronic* claim because the petitioner's attorney was present throughout a hearing on a post-trial motion challenging the effectiveness of counsel's representation and did not withdraw as counsel until the end of the hearing).

Petitioner has not cited, nor could the undersigned find, any precedent specifically addressing whether *Cronic* applies to a pretrial hearing such as the one involved in this case. The undersigned could find no case even remotely suggesting that such a hearing constitutes a "critical stage" in the trial proceedings or that, because the hearing involved a motion for substitution of counsel, the Sixth Amendment required that petitioner be represented by separate counsel at that proceeding.  In contrast, the Seventh Circuit has held that a hearing on defense counsel's motion to withdraw from the case is not a "critical stage" of the trial entitling the defendant to additional counsel to appear on his behalf.  *See United States v. Franklin*, 547 F.3d 726, 734 (7th Cir. 2008).  Although the Ninth Circuit court has suggested that separate counsel may be warranted if the defendant's current counsel "takes an adversarial and antagonistic stance" regarding the substitution motion, *see United States v. Dompier*, 361 F. App'x 823, 824

n.1 (9th Cir. 2010) (and Ninth Circuit cases cited therein), petitioner has not argued, nor is there any evidence in the record even remotely suggesting, that Fisse took an adversarial or antagonistic stance with respect to petitioner's motion for substitution of counsel, which was ultimately *granted* by the court.

Furthermore, petitioner has not cited, nor could the undersigned find, any case that would suggest the trial court's discovery ruling at the close of the hearing, which immediately followed the granting of petitioner's *pro se* request for substitution of counsel and continuance of the trial date for purposes of appointing new counsel, constituted a "critical stage" to which the *Cronic* presumption of prejudice arguably applied. Upon review of the record, and as discussed above in addressing the claim alleged in Ground One, it does not appear that the court's ruling setting the date of the pretrial hearing as the discovery cut-off date held "significant consequences" for petitioner. *See Woods*, 135 S.Ct. at 1376. At that point in the trial proceedings, discovery had long been completed. Indeed, if the court had not granted the petitioner's motion for substitution of counsel, the trial would have commenced the following week. In any event, new counsel appointed after the hearing to represent petitioner was not prohibited from filing a motion challenging the discovery ruling due to any evidence or witnesses that may have been missed by petitioner or his prior counsel or from adding further witnesses and evidence to the defense case that could not have been discovered in good faith before the deadline date of March 20, 2013.

In light of the present record, and given the imprecise contours of the *Cronic* right and lack of precedents that would support petitioner's position that *Cronic* applies to the case-at-hand, it was not unreasonable for petitioner's appellate counsel to have determined that the stronger argument was the one that was presented on direct appeal. As petitioner has pointed out in his traverse brief (*see* Doc. 7, at PAGEID#: 923), the allegedly "ignored" issue was brought to

the appellate court's attention by counsel as a factor to consider in determining whether the trial

court's discovery ruling amounted to reversible error. Specifically, petitioner's appellate counsel

asserted in support of the claim that was raised on direct appeal that the "trial court made

Appellant commit to his evidence, on the record, without the assistance of counsel, then basically

foreclosed new counsel from doing their job." (*See* Doc. 4, Ex. 20, at PAGEID#: 601).

Apparently, the court found no merit to that argument in overruling the assignment of error,

which undermines any contention by petitioner that it is reasonably likely the result of his appeal

would have been different if counsel had raised the *Cronic* issue in a separate assignment of

error.

Accordingly, in sum, the undersigned concludes that in this case, petitioner has not

demonstrated that his appellate counsel either acted unreasonably or prejudicially affected the

outcome of the appeal, as required under the two-prong *Strickland* standard, by failing to assert

as a separate assignment of error the claim that he was denied counsel at a "critical stage" of the

trial proceedings. *Cf. Woods*, 135 S.Ct. at 1377 (upholding the state court's decision rejecting

the petitioner's claim that he was denied counsel at a "critical stage" as neither "contrary to" nor

an unreasonable application of *Cronic* in a case involving circumstances that the Supreme Court

had never confronted); *Jones v. Tibbals*, No. 1:13cv358, 2015 WL 4249882, at *14 (N.D. Ohio

July 13, 2015) (quoting *Woods*, 135 S.Ct. at 1378) (finding no constitutional error in case

challenging the state appellate court's "decision that the trial court did not err in failing to

appoint . . . new counsel at [the petitioner's] hearing to withdraw his guilty plea" because

"'[w]ithin the contours of *Cronic*, a fairminded jurist could conclude that a presumption of

prejudice is not warranted'"), *appeal filed*, No. 15-3819 (6th Cir. July 29, 2015). Therefore,

although Ohio Court of Appeals did not consider the *Cronic* issue in addressing the underlying

claim of error that petitioner has contended should have been asserted on direct appeal, the undersigned cannot conclude under the "doubly deferential" standard of review required to be applied in this case that the state court's disposition of petitioner's ineffective-assistance-of-appellate-counsel claim was either contrary to or an unreasonable application of *Strickland*.

### B. Ground Two

In Ground Two of the petition, petitioner alleges that his appellate counsel was also ineffective for failing to assert a claim of prosecutorial misconduct as an assignment of error on direct appeal. (Doc. 3, at PAGEID#: 31). Petitioner specifically contends that his appellate counsel should have argued that petitioner was "denied a fair trial when the prosecutor told the jury during closing arguments that [petitioner] must have been guilty because [he] refused to take a breathalyzer test and that no one would refuse to take such a test unless they were guilty." (*Id.*).

The Ohio Court of Appeals was the only state court to issue a reasoned decision addressing the merits of petitioner's claim, which was raised in his application for reopening of the appeal. (*See* Doc. 4, Ex. 26, at PAGEID#: 689-90). The court determined that petitioner had not presented a genuine issue as to whether counsel was ineffective under the applicable two-part standard established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), because the underlying claim of prosecutorial misconduct lacked merit. (*See id.*, Ex. 42). The court reasoned that contrary to petitioner's contention, under Ohio law, "evidence of a refusal to take a breathalyzer and comments regarding the refusal are admissible at trial." (*Id.*, at PAGEID#: 852-53) (Ohio case citations omitted).

As discussed above, *see supra* pp. 8-9, this Court is bound by and must defer to the Ohio Court of Appeals' ruling that the prosecutor's remarks were not improper under Ohio law.

Furthermore, petitioner has not demonstrated that the Ohio Court of Appeals' adjudication of the underlying prosecutorial-misconduct claim is contrary to or involves an unreasonable application of clearly established federal law as determined by the Supreme Court.  Petitioner is not entitled to relief unless the prosecutor's alleged error "so infected the trial with unfairness as to render the resulting conviction a denial of due process."  *See Donnelly v. DeChristoforo,* 416 U.S. 637, 642-43 (1974); *see also Darden v. Wainwright,* 477 U.S. 168, 181 (1986) ("it 'is not enough that the prosecutor's remarks were undesirable or even universally condemned[;]'" rather, the "relevant question" is whether the prosecutor's challenged conduct rendered the trial fundamentally unfair in violation of due process).  The alleged misconduct must be examined within the context of the entire trial to determine whether it deprived the defendant of a fair trial. *United States v. Young,* 470 U.S. 1, 11-12 (1985).  Here, when viewed in context of the entire record and the other overwhelming evidence of guilt that was properly admitted at trial to establish petitioner's guilt on the OVI charges, petitioner has not demonstrated that the one remark by the prosecutor in closing arguments prejudicially affected the jury's verdict in this case.

Accordingly, in sum, because petitioner has not demonstrated that the Ohio Court of Appeals' resolution of the underlying prosecutorial-misconduct claim was either contrary to or involved an unreasonable application of well-established Supreme Court precedents, the undersigned further concludes that the Ohio Court of Appeals' adjudication of the ineffective-assistance-of-appellate-counsel claim alleged in Ground Two of the petition was neither contrary to nor involved an unreasonable application of *Strickland*. Petitioner, therefore, is not entitled to federal habeas relief based on the claim alleged in Ground Two of the petition.

**IT IS THEREFORE RECOMMENDED THAT:**

1.  The petitioner's *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 3) be **DENIED** with prejudice.

2.  A certificate of appealability should not issue with respect to any of the grounds for relief alleged in the petition because petitioner has not stated a "viable claim of the denial of a constitutional right," nor are the issues presented "adequate to deserve encouragement to proceed further."  *See Slack v. McDaniel,* 529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3.  With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

s/Stephanie K. Bowman
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

DAVID L. RABE,                                          Case No. 1:15-cv-361
       Petitioner,

                                     Bertelsman, J.
     vs.                                             Bowman, M.J.

OHIO ATTORNEY GENERAL
MIKE DEWINE,
       Respondent.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc